UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

NYJEE L. BOYD,

                                        Plaintiff,

              v.                                                        9:23-CV-0856
                                                                       (GTS/CFH)

MICHAEL DELASSE, et al.,

                                        Defendants.

_____

APPEARANCES:

NYJEE L. BOYD
15-B-2063
Plaintiff, pro se
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021


HON. LETITIA JAMES                          BRIAN D. RICHARDSON, ESQ.
New York State Attorney General             Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224


GLENN T. SUDDABY
United States District Judge


**DECISION AND ORDER**

I.     **INTRODUCTION**

       Pro se plaintiff Nyjee L. Boyd commenced this action by filing a complaint asserting

claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to

proceed in forma pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt. No. 4 ("IFP Application").  By

Decision and Order entered on August 23, 2023, the Honorable Gary L. Sharpe granted plaintiff's IFP Application, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed some of plaintiff's claims, and directed service and a response for the claims that survived sua sponte review.  *See* Dkt. No. 6 ("August 2023 Order").[1]

Presently before the Court is plaintiff's amended complaint.  Dkt. No. 21 ("Am. Compl.").

## II.   DISCUSSION

Because plaintiff is proceeding in forma pauperis and is an inmate suing government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the August 2023 Order and it will not be restated in this Decision and Order.  *See* August 2023 Order at 2-4.

### A.   The Complaint and August 2023 Order

In his original complaint, plaintiff asserted claims based on alleged wrongdoing that occurred during his incarceration at Coxsackie and Great Meadow Correctional Facilities within the New York State Department of Corrections and Community Supervision ("DOCCS").  *See generally* Compl.

The complaint was construed to assert the following claims for relief against the named defendants in their individual capacities: (1) First Amendment retaliation claims against defendants Lewis, Turriglio, Delasse, Bedard, Frazier, Shanley, Petrone, and

---

[1] This case was reassigned to the undersigned on February 7, 2024.  *See* Dkt. No. 24

Hanson; (2) First Amendment free exercise claim against defendants Lewis, Turriglio, and Delasse based on the removal of religious items from plaintiff's cell on September 24, 2022, and against defendants Bedard, Frazier, and Shanley based on the failure to remedy the property deprivation order imposed on September 24, 2022; (3) First Amendment access-to-courts claims against defendants Lewis, Turriglio, and Delasse based on the removal of legal documents, including grievances and a "property claim," from plaintiff's cell on September 24, 2022, and against defendants Bedard, Frazier, and Shanley based on the failure to remedy the property deprivation order imposed on September 24, 2022; (4) Eighth Amendment conditions-of-confinement claims against defendants Lewis, Turriglio, Delasse, Bedard, Frazier, Shanley, Petrone, Syed, Murphy, and Hanson; (5) Eighth Amendment excessive force and sexual abuse claims against defendants Petrone and Delasse based on an alleged incident on November 19, 2022, against defendants Hanson, John Doe #1 and John Doe #2 based on an alleged incident on February 23, 2023, and against defendants Hanson, LaFarr, and Bull based on an alleged incident on April 5, 2023; (6) an Eighth Amendment medical indifference claim against defendant Petrone; and (7) Fourteenth Amendment equal protection claims against defendant Hanson based on his use of racial slurs in connection with alleged wrongdoing that occurred on February 23 and March 7, 2023.  *See* August 2023 Order at 10-11.

The Court reviewed plaintiff's claims in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, and found that the following claims survived sua sponte review: (1) plaintiff's First Amendment retaliation claims against defendants Lewis, Turriglio, Delasse, Bedard, Frazier, Shanley, Petrone, and Hanson; (2) plaintiff's First Amendment free exercise claims against defendants Lewis, Turriglio, and Delasse; (3) plaintiff's Eighth Amendment

conditions-of-confinement claim against defendants Lewis, Turriglio, and Delasse based on the removal of clothing, bedding, and hygiene items from plaintiff's cell on September 24, 2022, and against defendants Bedard, Frazier, and Shanley based on the failure to remedy this property deprivation order; (4) plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Petrone, Frazier, and Syed based on the removal of clothing, bedding, and hygiene items from plaintiff's cell on November 13, 2022, and against defendant Shanley based on the failure to remedy the property deprivation order imposed on November 13, 2022; (5) plaintiff's Eighth Amendment excessive force and sexual assault claims against defendants Petrone, Delasse, Hanson, John Doe #1, John Doe #2, LaFarr, and Bull; and (6) plaintiff's Fourteenth Amendment equal protection claims against defendant Hanson.  *See* August 2023 Order at 27.  Plaintiff's remaining claims were dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.  *Id*. at 28.

## B.    Overview of the Amended Complaint

The amended complaint contains several allegations of wrongdoing that are materially similar to the allegations in the original complaint, as well as several new allegations of wrongdoing during plaintiff's confinement at Coxsackie and Great Meadow Correctional Facilities.  *See generally*, Am. Compl.  The following facts are set forth as alleged in the amended complaint.[2]

### 1. Coxsackie Correctional Facility

On September 24, 2022, at approximately 9:00 a.m., defendant Corrections Sergeant

---

[2]  Plaintiff has submitted over 200 pages of exhibits with his amended complaint, *see* Dkt. Nos. 21-1, 21-2, 21-3, 21-4, 21-5, which the Court has also considered as part of its sufficiency review herein.

Lewis approached plaintiff at his cell and advised that he was "being placed on property deprivation."  Am. Compl. at 20.  Plaintiff asked defendant Lewis the reason for the order, and was told it was because he "like[s] to file . . . grievances[.]"  *Id.*  Defendant Corrections Lieutenant Turriglio, who was also present, then directed plaintiff to gather all of his property. *Id*.

After doing so, plaintiff was removed from his cell by defendant Corrections Officer Delasse, who proceeded to remove all of plaintiff's "in-cell items[,]" including a religious bible, religious crown, all of his hygiene products, clothing, linens and towels, and legal documents. Am. Compl. at 20.  Defendant Delasse "threw away" plaintiff's legal documents, including "property claims" filed against Coxsackie Correctional Facility and copies of grievances related to a separate lawsuit in the Southern District of New York.  *Id.*

While this was happening, plaintiff "complained" to defendant Lewis about the removal of his property.  Am. Compl. at 20.  Defendant Lewis responded that when "complaints" are filed "against [his] staff, [he doesn't] see anything."  *Id.*  Defendant Delasse then interjected by telling plaintiff to stop filing complaints and asking if he was aware of "what happened to Rodney King[.]"  *Id.*

As a result of the destruction of plaintiff's property, he was unable to brush his teeth, take showers, practice his Rastafarian faith, clean his cell, or attend recreation, and was exposed to cold temperatures due to not having bedding.  Am. Compl. at 20-21.

On or about October 10, 2022, plaintiff advised defendant Corrections Captain Bedard during rounds about the deprivations he had experienced as a result of the removal and destruction of his property, and expressly stated that he was unable to attend recreation as a result of not having "state issued clothing[.]"  Am. Compl. at 21.  In response, defendant

Bedard advised plaintiff to stop filing grievances. *Id.*

Separately, plaintiff wrote a complaint to defendant Deputy Superintendent of Security Frazier regarding the destruction of his property. Am. Compl. at 21. Defendant Frazier failed to respond to the complaint. *Id*.

On October 11, 2022, plaintiff advised defendant Coxsackie Correctional Facility Superintendent Shanley during rounds about the deprivations he had experienced. Am. Compl. at 21. In response, defendant Stanley stated, "you have to do your time and learn to stop writing . . . frivilious [sic] grievances. You'll be given your property back as your behavior improve[s]." *Id.*

On October 15, 2022, plaintiff verbally "notified" defendant Frazier during rounds about the deprivations he had experienced. Am. Compl. at 21. In response, defendant Frazier advised plaintiff that if he "stop[ped] harassing staff with . . . frivlious [sic] grievances" he would be "taken off deprivations[.]" *Id.* On October 23, 2022, plaintiff's personal property was returned to him. *Id.*

On November 13, 2022, defendants Frazier and Corrections Lieutenant Syed "authorize[d] a deprivation order" and directed defendant Corrections Sergeant Petrone to remove plaintiff's property from his cell "[d]ue to plaintiff being accused of projecting a[n] unknown liquid[,] striking an officer on [this] date." Am. Compl. at 24. As a result of the deprivation order, plaintiff was "deprived of all in cell items[,]" including a toothbrush, tissue, soap, bedding, clothing, religious materials, and legal documents, from November 13 to December 20, 2022. *Id.*

Plaintiff wrote to defendant Frazier regarding these "deprivations and conditions" but did not receive a response to his correspondence. Am. Compl. at 24. During this deprivation

period, plaintiff was "exposed to freezing temperatures" in his cell, was unable to brush his teeth or shower, clean his cell, or attend recreation, and had to sleep on the floor as a result of not having a mattress.  *Id.*  Plaintiff was also "unable to practice [his] religion" during this time "due to being deprived of [his] Bible and [religious] crown[.]"  *Id*.

On November 19, 2022, plaintiff was housed in the Residential Mental Health Unit at Coxsackie Correctional Facility.  Am. Compl. at 17.  At approximately 11:30 a.m., plaintiff stopped defendant Petrone while he was making rounds and "requested emergency medical" for chest pains he was experiencing.  *Id.*  Defendant Petrone ignored plaintiff's request.  *Id.*

Thereafter, plaintiff advised "the A-man" during "tour rounds" about his chest pains and "shortly" after, he was "escorted to the medical unit" by defendants Petrone and Delasse.  Am. Compl. at 17.  Upon arriving at the medical unit, defendant Petrone directed defendant Delasse to escort plaintiff inside the medical examination room and "followed in[.]"  *Id.*  Once inside the examination room, defendant Petrone closed the door and another unidentified official stood on the other side to prevent a "visual inside the room."  *Id.*

While plaintiff was "in full restraints" inside the room, defendant Petrone stated, "You want to be stupid and waste my time[?]"  Am. Compl. at 17.  Defendant Petrone then approached plaintiff and reached inside his pants with his hand while defendant Delasse held plaintiff's body to restrain him.  *Id.*  Defendant Petrone cautioned plaintiff against "playing . . . game[s,]" then removed his hand from inside plaintiff's pants, and, along with defendant Delasse, "repeatedly slapped . . . and punched [plaintiff] in the head[, ] face and body[.]"  *Id.* at 17-18.  After approximately fifteen to twenty seconds, the officials stopped assaulting plaintiff and defendant Petrone advised him to stop filing grievances.  *Id.* at 18.

7

Between November 19 and November 21, 2022, defendant Corrections Officer Murphy turned off the water in plaintiff's cell at the direction of defendant Petrone. Am. Compl. at 24. On November 21, 2022, plaintiff "notified" defendants Shanley and Frazier about the complications he was experiencing as a result of the property deprivation order, yet these officials failed to take corrective action. *Id.* at 25. As a result of the deprivation order, plaintiff did not have access to certain legal documents, which caused him to "miss[ ] court pending deadlines for civil and pending criminal cases." *Id*.

### 2. Great Meadow Correctional Facility

On February 6, 2023, while plaintiff was housed in the Behavioral Health Unit ("BHU") at Great Meadow Correctional Facility, he submitted a grievance challenging the "policy and custom" of depriving inmates in the BHU of "all in cell property[,]" including bedding, hygiene items, legal and religious materials, and cleaning supplies, for a minimum of two weeks as punishment for "any staff related incidents[.]" Am. Compl. at 56-57. Plaintiff submitted the grievance after witnessing another inmate "be placed under such conditions afther [sic] being extracted by staff" in January, 2023. *Id*. at 57. Plaintiff observed this inmate complain to defendant First Deputy Superintendent Torres, defendant Office of Mental Health Unit Chief Bailey, and defendant Deputy Superintendent of Mental Health M. Collins about the deprivations on or around February 2, 2023, yet these officials failed to take corrective action. *Id*. Plaintiff also complained to defendant Coxsackie Correctional Facility Superintendent C. Collins and defendant M. Collins about this policy and practice on April 24, 2023, and believes that defendants Deputy Superintendent of Security Montgomery, Office of Special Investigations Official Maher, and former DOCCS Commissioner Annucci were also

aware of this policy and practice on or before this date.  *Id*. at 56, 58; Dkt. No. 21-3 at 25-26.

On February 13, 2023, plaintiff was issued a misbehavior report charging him with certain rules violations and issued a warning, in accordance with DOCCS Directive No. 4939, that future inappropriate conduct may result in the imposition of an exposure control suit. Am. Compl. at 30.  On February 14, 2023, defendant Corrections Sergeant Hanson "rescinded this warning" and "directed [that plaintiff] be placed in a[n] exposure suit for all out of cell activitys [sic][.]"  *Id*.

On February 23, 2023, plaintiff was "admitted to [the] OBS" unit within Great Meadow Correctional Facility.  Am. Compl. at 30.  During the admission process, plaintiff was placed in the exposure suit before being removed from his cell.  *Id*.  Plaintiff asked defendant Hanson why this was necessary, and defendant Hanson responded that it was because he likes to file grievances.  *Id.*

Defendant Hanson then "directed" defendants Corrections Officer John Doe #1 and Corrections Officer John Doe #2 to hold plaintiff's arms and face against the wall, which he said was because plaintiff "like[s] to file grievances[.]"  Am. Compl. at 26.  During this exchange, defendant Hanson called plaintiff a racial slur.  *Id.*  Before plaintiff could respond, defendant Hanson "grabbed [plaintiff's] testicles excessively tight" and directed defendants John Doe #1 and John Doe #2 to strip search plaintiff.  *Id.*

The next day, defendant Hanson advised an incarcerated individual named Randy Douglas that plaintiff was placed in an exposure suit because he writes grievances against corrections officers.  Am. Compl. at 30-31.  For the next month, plaintiff continued to be placed in an exposure suit any time he was removed from his cell.  *Id.* at 31.

On March 7, 2023, defendant Hanson escorted plaintiff to the medical unit in response to plaintiff's complaints of chest pains. Am. Compl. at 33. During the escort, defendant Hanson "berated [plaintiff] with racist comments and threats" based on his filing of a "PREA complaint" against Corrections Officer Ventura (not a party). *Id.* Thereafter, defendant Hanson "issued [plaintiff] a falsified misbehavior report" that charged him with "falsely report[ing] to staff on rounds that he had chest pains[.]" *Id.*

On March 8, 2023, plaintiff "wrote to New York State Commission of Correction, [Governor] Kathy Hocul [sic], and [the] Office of the Inspector General" regarding the aforementioned incidents. Am. Compl. at 27.

On March 13, 2023, while plaintiff was en route to a program, he was searched by Corrections Officers Russell and Anderson (not parties) at the direction of defendant Hanson. Am. Compl. at 32. During the search, defendant Hanson directed Russell and Anderson to "confiscate [plaintiff's] belt" because he "like[s] to file grievances[.]" *Id.*

That same day, plaintiff informed BHU staff that he was "feeling suicidal" and was visited at his cell by defendant Office of Mental Health Official McCarthy. Am. Compl. at 61. Plaintiff informed defendant McCarthy that he was "feeling suicidal" and wished to "report a PREA complaint" because "staff was refusing to allow [him] to use the phone" to make the report. *Id.* Defendant McCarthy responded by telling plaintiff, "Your [sic] not suicidal[.] Stop writting [sic] complaints [and] you won't go through this." *Id.* Defendant McCarthy then left plaintiff's cell without reporting his PREA complaint. *Id.*

At approximately 2:18 p.m., plaintiff again informed BHU staff that he was feeling suicidal. Am. Compl. at 61. Thereafter, defendant McCarthy again visited plaintiff at his cell,

at which time plaintiff informed her that defendant Hanson had confiscated his belt, and that he feared for his life and wanted to "kill" himself. *Id*. Defendant McCarthy "left without documenting [plaintiff's] complaint" and subsequently issued plaintiff two false misbehavior reports. *Id*.

On April 5, 2023, at approximately 2:15 p.m., plaintiff was escorted to an examination room by defendants Hanson and Corrections Officers LaFarr and Bull. Am. Compl. at 28. Once there, defendant LaFarr removed the mechanical restraints from plaintiff and directed him to place his hands on the wall. *Id.* After plaintiff complied, defendant Hanson told plaintiff that he was aware of a sexual assault complaint plaintiff filed, and was going to "give [plaintiff] something to write[.]" *Id.* Defendant Hanson then directed defendant LaFarr to "teach [plaintiff] a lesson" and left the room. *Id.* Thereafter, defendant LaFarr placed his hand inside plaintiff's shorts and "grabbed [his] testicles severly [sic] hard" as defendant Bull "grabbed [plaintiff's] neck" and choked him. *Id.* Plaintiff was then "slammed . . . to the ground" and defendant Hanson returned to the room. *Id.*

After plaintiff was placed in handcuffs, defendants Hanson, Bull, and LaFarr "repeatedly" struck him in the head, face, and body until "responding staff arrived" at the scene. Am. Compl. at 28. Plaintiff was subsequently issued a false misbehavior report authored by defendant LaFarr, which charged him with possessing a weapon. *Id*. The misbehavior report was "later administratively reversed." *Id*.

On the morning of April 6, 2023, plaintiff was housed in the BHU and "requested crisis[.]" Am. Compl. at 55. In response, defendant McCarthy arrived at his cell, at which time plaintiff informed her of "the sexual assault" that occurred the previous day. *Id.* Plaintiff

also "informed her that [he] feared for [his] life and continue[d] to be retaliated[.]" *Id.* Defendant McCarthy told plaintiff that "this is what occurs" for writing complaints and then walked away. *Id.* Thereafter, plaintiff was issued a misbehavior report for complaining to defendant McCarthy. *Id.*; Dkt. No. 21-3 at 6-7.

On April 17, 2023, at approximately 12:28 p.m., plaintiff attended a disciplinary hearing conducted by defendant Supervisor Offender Rehabilitation Coordinator ("SORC") Benware for the misbehavior report issued by defendant LaFarr on April 5, 2023. Am. Compl. at 50. During the hearing, plaintiff "objected to the timeliness" of the proceeding because it was not "commenced within 5 days" of the misbehavior report. *Id.* Plaintiff then "requested assistance" and asked for "all video/audio" recordings of the medical examination room and the BHU B-Block on April 5, 2023, and other documentary evidence. *Id.* The hearing was then adjourned. *Id.*

Later that day, at approximately 2:45 p.m., defendants Corrections Sergeant Velie, Corrections Officer John Doe #4, Corrections Officer John Doe #5, Corrections Officer John Doe #6, and Corrections Officer John Doe #7 approached plaintiff at his cell, directed him to face the wall and place his hands through "the feed up port," and then placed him in restraints. Am. Compl. at 47. Plaintiff was then removed from his cell and searched by defendant John Doe #4 with "a hand metal detector" in front of his cell. *Id.* When defendant John Doe #4 moved the metal detector to plaintiff's "crotch area[,]" he told defendant Velie that the detector "vibrated[,]" which was untrue. *Id.* Defendant Velie then "directed [the] officers to escort [plaintiff] to medical examination room #1." *Id.*

Upon entering the elevator en route to the examination room, defendant John Doe #4 stated, "So you like to file PREA's[.]" Am. Compl. at 47. Plaintiff "ignored" the comment. *Id.*

Thereafter, plaintiff arrived at the examination room, accompanied by defendants Velie, John Doe #4, John Doe #5, John Doe #6, John Doe #7, and Corrections Sergeant John Doe #1. Am. Compl. at 47. After defendant John Doe #4 removed the restraints from plaintiff's wrists, plaintiff was directed to place his hands on the wall and remove his clothing, which he did. *Id.* Defendant John Doe #4 then began to "degrade" plaintiff, and made him "bend over and wiggle[.]" *Id.* at 47-48. Plaintiff was then directed to "get dressed," and he was then "cuffed" and escorted back to his cell. *Id.* at 48. Defendant John Doe #4 also told plaintiff not to report the incident. *Id.*

Shortly after arriving at his cell, plaintiff encountered defendant Hanson, who told plaintiff "during a block search of the BHU" that he needed to "remove everything out of [his] cell[.]" Am. Compl. at 44. Corrections Officials then proceeded to remove all of plaintiff's property from his cell, including clothing, bedding and hygiene materials, religious materials, and legal documents. *Id.* Plaintiff asked defendant Corrections Lieutenant Riel, who was present at the scene, why he was "being deprived of everything[,]" and defendant Riel responded, "maybe it's those grievances[.]" *Id.* Plaintiff was then placed back in his cell, at which time he told defendants Riel, Velie, and Corrections Sergeant Lovely that they were "violating [his] constitutional right[s]" by depriving him of his property. *Id.* Defendants Velie and Lovely directed "officers to place [plaintiff] behind the plexi-shield[.]" *Id.* Later that day, plaintiff "attempted to hang [himself] with a shirt [he] was wearing[,]" resulting in his transfer to an "OBS" cell until April 21, 2023. *Id.* at 44-45.

At some point after plaintiff returned to his BHU cell, he informed defendants M. Collins, C. Collins, and Corrections Lieutenant Murphy "during tour rounds" that he "was being deprived of all in cell items[,]" including "bedding, all clothing, all religious material . . .

13

[and] all hygiene [items.]"  Am. Compl. at 45.  Plaintiff "requested a transfer" but was "told . . . there is nothing they can do and all deprivations get reviewed on Sundays."  *Id.*  As a result, plaintiff's personal property was not returned to him until April 30, 2023.  *Id.*

On April 28, 2023, plaintiff's disciplinary hearing reconvened before defendant Benware.  Am. Compl. at 50.  During the hearing, a video of the examination room was played.  *Id.*  Plaintiff "pointed out discrepancies" between the video and statement made by defendant Hanson in his documentation of the pertinent incident.  *Id.* at 50-51.  Plaintiff also requested the "video/audio" recording of the BHU B-Block from April 5, 2023, which would have proven that defendants Hanson and Bull "fabricated there [sic] . . . reports[,]" and that plaintiff's removal from his cell on that date was "pre-determined" for retaliatory reasons.  *Id.* at 51.  Defendant Benware denied plaintiff's request for the recording.  *Id.*

Thereafter, the hearing continued with testimony from defendants Hanson and LaFarr.  Am. Compl. at 52.  Plaintiff questioned both witnesses and the hearing was then adjourned.  *Id.*  On May 1, 2023, plaintiff was "escorted from the suicide watch back to the hearing[.]"  *Id.*  However, plaintiff was unable to participate in the hearing "due to [his] mental health[.]"  *Id.* at 52-53.

After plaintiff was removed from the hearing, defendant Benware continued it in his absence.  Am. Compl. at 53.  At the conclusion of the hearing, plaintiff was "found guilty of all charges" and sentenced to 730 days of confinement in a special housing unit ("SHU") cell, 365 days of lost privileges and recreation, and a six month loss of good time credits.  *Id.*

The next day, as a result of the disciplinary determination, all of plaintiff's personal property, including his personal mail, books, and religious material, was confiscated.  Am. Compl. at 53.

On May 12, 2023, at approximately 5:45 p.m., defendant Lovely informed plaintiff that he "would not receive commissary" due to his disciplinary sanctions.  Am. Compl. at 34. Plaintiff stated his belief to defendant Lovely that denying him commissary was for the sole purpose of retaliation" because "everybody in the BHU has a loss of commissary sanction [and] still recieves [sic] commissary[.]"  *Id.*

Fifteen minutes later, an OMH official arrived at plaintiff's cell with defendant Lovely and Corrections Officer Trise (not a party).  Am. Compl. at 34.  As plaintiff was complaining to the OMH official about defendant Lovely denying him commissary, defendant Lovely "interjected" and directed plaintiff to "give her all [of his] state issued clothing and linen."  *Id.* Plaintiff "advised [defendant Lovely] that he would" comply with her request, at which point she accused him of having "something in his hand."  *Id.*

Ten minutes later, defendant Corrections Officer Lashinsky arrived at plaintiff's cell and asked him "if [he] was coming out for a cell search."  Am. Compl. at 35.  Plaintiff stated, "Yes."  *Id.*  Five minutes later, defendant Corrections Officer Broom arrived at plaintiff's cell. *Id.*  Shortly thereafter, an "extraction team[,]" which included defendants Velie, Corrections Officer McFee, Corrections Officer Macura, Corrections Officer Smith, Corrections Officer Tyler, and Corrections Lieutenant Gundrum, arrived at plaintiff's cell.  *Id.* at 35-36, 41.  As plaintiff attempted to place his hands through "the feed up port," defendant Velie falsely stated that plaintiff was "reaching" and then "sprayed [him] in the face and body" with "evaporating fog" three times even though he was "not resisting[.]"  *Id.* at 35-36.  Defendant Velie then ordered that plaintiff's cell be opened.  *Id.* at 36.

Once plaintiff's cell was opened, defendants McFee and Macura entered and assaulted him as defendants Smith and Tyler placed restraints on his hands and legs.  Am.

15

Compl. at 36.  Plaintiff was then escorted to the shower, where defendant Macura subjected him to a "water boarding technique" while defendant McFee "attempted to gauge out [his] left eye" with his finger for "approx[imately] 20 seconds." *Id.* at 37.

Thereafter, defendants McFee, Macura, Tyler, Smith, Lashinsky, Velie, and Lovely removed plaintiff from the shower area and brought him to a medical examination room in the infirmary.  Am. Compl. at 37.  Once inside, plaintiff "was forced to undergo a strip frisk" before being evaluated by a nurse, who ultimately directed "staff to place [plaintiff] on . . . suicide watch." *Id.*

Plaintiff was subsequently escorted to a suicide watch cell wearing "just a smock wrap[.]" Am. Compl. at 38.  The cell did not have a mattress, which was removed by defendant Corrections Officer John Doe #3, the "block desk officer[,]" at defendant Velie's direction.  *Id.*  Plaintiff informed defendant John Doe #3 that the walls, floor, toilet, sink, and bed frame in his cell were covered in urine and feces.  *Id.*  Defendant John Doe #3 responded that there was nothing he could do.  *Id.*

On May 15, 2023, defendants Mental Health Therapist Jane Doe #1 and Mental Health Therapist Jane Doe #2 visited plaintiff at his cell.  Am. Compl. at 38.  Plaintiff informed these officials that he was recently assaulted, feared for his life, and was also being housed in an unsanitary cell without bedding and hygiene materials.  *Id.*  Plaintiff showed these officials "the urine and feces [on] the cell walls, floor, toilet, sink, [and] bed frame" and explained that he was unable to sleep because of the "foul odor and freezing temperatures at night[.]" *Id.* at 38-39.  Defendants Jane Doe #1 and Jane Doe #2 informed plaintiff that his complaints were "security issues" and there was "nothing they can do[.]" *Id.* at 39.

Later that morning, plaintiff spoke to defendants M. Collins and Superintendent C.

16

Collins during "tour rounds" and reported his cell conditions and the recent assault.  Am.
Compl. at 39.  Both officials stated that they would "look into" the issues, "but nothing was
actually done."  *Id.*  Plaintiff remained in the same cell until May 23, 2023.  *Id.*

On May 23, 2023, plaintiff was placed in an "empty cell" within the BHU.  Am. Compl.
at 40.  Plaintiff's personal property was returned to him on June 22, 2023.  *Id.* at 53-54.

At some point around this time, plaintiff appealed defendant Benware's disciplinary
determination, which was "reversed" on July 10, 2023, with a rehearing ordered for July 13,
2023.  Am. Compl. at 53.  At the rehearing, plaintiff was found guilty of two disciplinary
charges, but not guilty of the smuggling charge.  *Id.*  Plaintiff "again appealed" the disciplinary
determination, which was "ultimately reversed and expunged from [his] institutional records"
on August 22, 2023.  *Id.*; Dkt. No. 21-1 at 21-22.

### 3.  Plaintiff's Claims

Liberally construed, the amended re-asserts the following claims: (1) all of the claims
that survived sua sponte review; (2) First Amendment access-to-courts and free exercise
claims against defendants Lewis, Turriglio, and Delasse based on the removal of legal
material from plaintiff's cell on September 24, 2022, and against defendants Bedard, Frazier,
and Shanley based on the failure to remedy this property deprivation order; (3) Eighth
Amendment conditions-of-confinement claims against defendants Murphy and Petrone
based on depriving plaintiff of access to water in his cell between November 19 and
November 21, 2022; and (4) an Eighth Amendment conditions-of-confinement claim against
defendant Hanson based on imposing a directive on February 14, 2023, requiring plaintiff's
placement in an exposure control suit for all movement activities.

In addition, the amended complaint asserts the following new claims: (1) a First

Amendment retaliation claim against defendant McCarthy based on this official ignoring plaintiff's suicidal feelings in response to his complaints of abuse on March 13, 2023; (2) a First Amendment retaliation claim against defendant McCarthy based on this official ignoring plaintiff's suicidal feelings and complaints of abuse on April 6, 2023, and issuing him a misbehavior report in response to his stated concerns; (3) First Amendment retaliation claims against defendants Velie, John Doe #4, John Doe #5, John Doe #6, John Doe #7, Corrections Sergeant John Doe #1, Hanson, Riel, and Lovely based on incidents that occurred on April 17, 2023; (4) a First Amendment retaliation claim against defendant Lovely based on subjecting plaintiff to various deprivations on May 12, 2023; (5) First Amendment access-to-courts claims against defendants Petrone, Frazier, and Syed based on the removal of legal material from plaintiff's cell on November 13, 2022, and against defendant Shanley based on the failure to remedy the property deprivation order imposed on November 13, 2022; (6) First Amendment free exercise claims against defendants Petrone, Frazier, and Syed based on the removal of religious items from plaintiff's cell on November 13, 2022, and against defendant Shanley based on the failure to remedy the property deprivation order imposed on November 13, 2022; (7) First Amendment free exercise claims against defendants Bailey, Superintendent C. Collins, Deputy Superintendent of Mental Health M. Collins, former DOCCS Commissioner Annucci, Deputy Superintendent of Security Montgomery, Office of Special Investigations Official Maher, and First Deputy Torres based on these officials authorizing or failing to remedy an automatic property deprivation policy that extends to the deprivation of religious materials as a punishment for "any staff related incidents"; (8) First Amendment free exercise claims against defendants Hanson, Riel, and Lovely based on the removal of religious items from plaintiff's cell on April 17, 2023, and

18

against defendants M. Collins, C. Collins, and Murphy based on the failure to remedy this property deprivation order; (9) Eighth Amendment conditions-of-confinement claims against defendants Bailey, Superintendent C. Collins, Deputy Superintendent of Mental Health M. Collins, former DOCCS Commissioner Annucci, Deputy Superintendent of Security Montgomery, Office of Special Investigations Official Maher, and First Deputy Torres based on these officials authorizing or failing to remedy an automatic property deprivation policy that extends to the bedding and hygiene materials as a punishment for "any staff related incidents"; (10) Eighth Amendment conditions-of-confinement claims against defendants Hanson, Riel, and Lovely based on the removal of clothing, bedding, and hygiene items from plaintiff's cell on April 17, 2023, and against defendants M. Collins, C. Collins, and Murphy based on the failure to remedy this property deprivation order; (11) Eighth Amendment conditions-of-confinement claims against defendants John Doe #3, Mental Health Therapist Jane Doe #1, Mental Health Therapist Jane Doe #2, M. Collins, and Superintendent C. Collins based on these officials allowing plaintiff to be housed in unsanitary conditions between May 12 and May 23, 2023; (12) Eighth Amendment conditions-of-confinement claims against defendants Velie, John Doe #3, McFee, C.O. Macura, C.O. Smith, C.O. Tyler, Lashinsky, Mental Health Therapists Jane Doe #1 and Jane Doe #2, and Superintendent C. Collins based on the events of May 12, 2023, and continued deprivations through June 22, 2023; (13) Eighth Amendment excessive force, failure-to-intervene, and sexual abuse claims against defendants Lashinsky, Broom, Velie, McFee, Macura, Smith, Tyler, Lovely, and Gundrum based on alleged incidents that occurred on May 12, 2023; (14) an Eighth Amendment medical indifference claim against defendant McCarthy based on this official ignoring plaintiff's suicidal feelings, and failing to report his sexual abuse claim; (15) a

Fourteenth Amendment due process claim against defendant Hanson based on placing plaintiff in an exposure suit; (16) Fourteenth Amendment disciplinary due process claims against defendants Benware, LaFarr, and Hanson; (17) state law assault and battery claims; and (18) state law constitutional claims.[3]

For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

## C.   Analysis

### 1.   New Claims Based on New Allegations of Wrongdoing

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights

---

[3]  Plaintiff casts some of his Eighth Amendment claims as "failure-to-protect" claims in addition to, or instead of, "conditions-of-confinement" or "medical indifference" claims.  *See, e.g.*, Am. Compl. at 34-49, 61-62. However, it makes no difference how the Court analyzes these claims because "deliberate indifference means the same thing" for any Eighth Amendment claim based on alleged deliberate indifference to a serious threat to health or safety.  *See Darnell v. Pineiro*, 849 F.3d 17, 33 n.9 (2d Cir. 2017) ("[T]he Court's interpretation of deliberate indifference applied to any pretrial detainee claim for deliberate indifference to serious threat to ... health or safety—such as from unconstitutional conditions of confinement, or the failure-to-protect—because deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment." (alteration in original) (quotation marks and citation omitted)); *see also Taylor v. Microgenics Corp.*, No. 21-CV-6452, 2023 WL 1865274, at *13, *13 n.9 (S.D.N.Y. Feb. 9, 2023) (construing claim based on allegations that inmate was housed in a dangerous environment where another inmate "was stabbed while sleeping," and where "multiple fights broke out [and] plaintiff's cell mate had not seen sunlight in thirty-three years" as an Eighth Amendment conditions-of-confinement claim, but noting that a failure-to-protect claim based on his transfer to this environment "would be subject to the same legal standard and dismissed on the same grounds); *Cruz v. Hillman*, No. 01-CV-4169, 2002 WL 31045864, at *8 (S.D.N.Y. May 16, 2002) (analyzing failure-to-protect and conditions-of-confinement claims together under the same analysis, and dismissing both claims for failure to plead a "sufficiently serious" injury when plaintiff "repeatedly allege[d] that his life was in danger" and that he suffered "much mental anguish and a great deal of suffering from worry and grief"); *cf. McCormick v. Cnty. of Westchester*, No. 19-CV-2916, 2023 WL 2632204, at *4 (S.D.N.Y. Mar. 24, 2023) ("To state a conditions of confinement, failure to protect, or deliberate indifference to medical needs claim, an inmate must plausibly allege (1) 'that he suffered a sufficiently serious constitutional deprivation[,]' and (2) 'that the defendant acted with deliberate indifference.'" (quoting *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017)).  Accordingly, the Court declines to analyze any of plaintiff's Eighth Amendment claims based on alleged deliberate indifference to his health or safety under more than one theory of liability.

established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).  If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

The Second Circuit recently clarified that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. (quoting *Iqbal*, 556 U.S. at 676).  Thus, in the context of an Eighth Amendment claim against a supervisory official, for example, a plaintiff must establish that the supervisory official himself "acted with deliberate indifference—meaning that [the official] personally knew of and disregarded an excessive risk to [the plaintiff's] health or safety." *Id*. at 619 (internal quotation marks and citation omitted).

### a. Retaliation Claims

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those

otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).  "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  "A prisoner's filing of a grievance against a corrections officer is protected by the First Amendment." *Baskerville v. Blot*,  224 F. Supp. 2d 723, 731 (S.D.N.Y. 2002) (citing cases).

At this stage of the proceeding, and mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), plaintiff's newly asserted retaliation claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### b.  Access-to-Courts Claims

In *Bounds v. Smith*, the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  430 U.S. 817, 828 (1977).  The right

22

of access to the courts is also implicated when a prisoner experiences interference with his mail. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

The "right of access to the courts" requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds*, 430 U.S. at 828, *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004).[4]  "However, this right is not 'an abstract, freestanding right . . . .' and cannot ground a Section 1983 claim without a showing of 'actual injury.'" *Collins v. Goord*, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury. *Lewis*, 518 U.S. at 353; *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

"A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik,* No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999).  Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53 (noting that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense").  "Mere

---

[4]  "[A] person's right of access to the courts has been found to arise not only under the First Amendment but under other parts of the Constitution, including the Due Process Clause of the Fourteenth Amendment." *Lasher v. Dagostino*, No. 9:16-CV-0198 (BKS), 2016 WL 1717205, at *4 (N.D.N.Y. Apr. 28, 2016) (collecting cases).

'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint . . . ." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 415-16.  "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417-18 (footnote omitted).

"Finally, . . . the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.  Rather, the injury must be to an inmate's ability "to attack [his] sentence[ ], directly or collaterally, [or] . . . to challenge the conditions of [his] confinement." *Id*. at 355.  "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*.

In this case, plaintiff alleges that as a result of a property deprivation order imposed on November 13, 2022, certain items were removed from his cell, including legal documents needed for ongoing (and unidentified) civil and criminal cases.  Am. Compl. at 25.  According to plaintiff, as a result of not having these documents, he missed unidentified court deadlines.  *Id.*

As an initial matter, the amended complaint alleges that plaintiff's property was

24

returned to him on December 20, 2022.  Am. Compl. at 24.  In addition, the amended

complaint fails to identify any legal action that plaintiff was unable to pursue, or had

dismissed, as a result of the alleged temporary removal of legal materials from his cell.

Furthermore, although plaintiff alleges that he missed court deadlines, he does not explain

how this impacted his ability to prosecute his claims, nor does he provide any details

regarding the underlying claims in any of his cases.  Thus, the Court has no basis to

plausibly infer either that the "arguable" nature of any underlying claim was more than hope,

or that plaintiff suffered an actual injury of a constitutional magnitude in any court proceeding

as a result of the alleged temporary removal of legal materials from his cell.

Accordingly, plaintiff's First Amendment access-to-courts claims based on alleged

property deprivations beginning on November 13, 2022, are dismissed pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief

may be granted.

### c. Free Exercise Claims

The First Amendment to the United States Constitution guarantees the right to free

exercise of religion.  *See* U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719

(2005).  As is true with regard to the First Amendment generally, the free exercise clause

applies to prison inmates, subject to appropriate limiting factors.  *See Ford v. McGinnis*, 352

F.3d 582, 588 (2d Cir. 2003) (holding that "[p]risoners have long been understood to retain

some measure of the constitutional protection afforded by the First Amendment's Free

Exercise Clause" (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

To state a claim under the Free Exercise Clause of the First Amendment, an inmate

"must show at the threshold that the disputed conduct substantially burdens his sincerely

held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006)

(articulating test that inmates "must show at the threshold that the disputed conduct . . .

burdens his sincerely held religious beliefs," prior to advancing to the *Turner* test and

"legitimate penological interests that justify the impinging conduct").  "For a burden to be

substantial, a plaintiff must demonstrate that the government's action pressures him to

commit an act forbidden by his religion or prevents him from engaging in conduct or having a

religious experience mandated by his faith." *Booker v. Maly*, No. 9:12-CV-246 (NAM/ATB),

2014 WL 1289579, at *22 (N.D.N.Y. Mar. 31, 2014), *aff'd*, 590 Fed. App'x 82 (2d Cir. 2015)

(summary order).

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro

se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's free exercise

claims against defendants Petrone, Frazier, Syed, Shanley, C. Collins, M. Collins, Hanson,

Riel, Lovely, and Murphy survive sua sponte review and require a response.  In so ruling, the

Court expresses no opinion as to whether these claims can withstand a properly filed

dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's free

exercise claims against defendants Bailey, Annucci, Montgomery, Maher, and Torres based

on an alleged policy within Great Meadow Correctional Facility of depriving inmates in the

BHU "all in cell property[,]" including bedding, hygiene items, legal and religious materials,

and cleaning supplies, for a minimum of two weeks as punishment for "any staff related

incidents[.]"  Am. Compl. at 56-57.

As an initial matter, although plaintiff generically alleges that these defendants were

aware of an alleged policy of depriving inmates of in-cell property as a form of punishment,

the Court has no basis to plausibly infer that these officials were ever directly involved in the removal of religious materials from plaintiff's cell, or made aware that any such removal occurred.  Indeed, the amended complaint is devoid of any allegations which plausibly suggest that plaintiff specifically communicated to any of these defendants at any point that religious materials were removed from his cell, which he needed to practice his religion. Furthermore, none of the written deprivation orders attached to the amended complaint indicate that religious materials were removed from plaintiff's cell, *see* Dkt. No. 21-3 at 1, 4, 27, and the applicable DOCCS Directive that governs deprivation orders, of which the Court takes judicial notice,[5] prohibits denying incarcerated individuals any "essential service" unless the "essential service would cause a threat to the safety or security of the facility . . . [or] the incarcerated individual, staff or other incarcerated individuals[,]" and requires the daily review of any deprivation order.  *See* DOCCS Directive #4933.IV.B; https://doccs.ny.gov/system/files/documents/2024/01/4933_0.pdf (last visited Feb. 16, 2024). Thus, the Court has no basis to plausibly infer from the allegations in the amended complaint and documents attached thereto that defendants Bailey, Annucci, Montgomery, Maher, and/or Torres were personally involved in the alleged interference with plaintiff's ability to practice his religion.  *See Haywood v. Annucci*, No. 18-CV-10913, 2020 WL 5751530, at *5 (S.D.N.Y. Sept. 25, 2020) (finding no personal involvement where plaintiff "makes no mention of [defendant] in the body of his Complaint or Amended Complaint" and "offers no factual allegations suggesting that [defendant] was present for, knew of, or even had any

---

[5]  A court may at any stage of a proceeding take judicial notice of "a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed . R. Evid. 201; *see also Jones v. Annucci*, No. 16-CV-3516, 2018 WL 910594, at *5 n.3 (S.D.N.Y. Feb. 14, 2018) (taking judicial notice of a DOCCS directive).

reason to know about the alleged" violation).

Accordingly, plaintiff's First Amendment free exercise claims against defendants Bailey, Annucci, Montgomery, Maher, and Torres are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### d. Conditions-of-Confinement Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials.  *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  This includes punishments that "involve the unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety."  *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981).

To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element.  *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996).  A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) the defendants acted with "deliberate indifference." *Wilson*, 501 U.S. at 303-04.

"When a plaintiff alleges multiple unconstitutional conditions of confinement, the court

28

may aggregate the effect of all of the conditions, 'but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Wilson*, 501 U.S. at 304).  "Each condition 'must be measured by its severity and duration, not the resulting injury,' and the conditions are not subject to 'a bright-line durational or severity threshold.'" *Van Hoven v. City of New York*, No. 16-CV-2080, 2018 WL 5914858, at *7 (S.D.N.Y. Aug. 21, 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017)), *report and recommendation adopted by* 2018 WL 4417842 (S.D.N.Y. Sept. 17, 2018).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that the following newly asserted conditions-of-confinement claims survive sua sponte review and require a response: (1) plaintiff's conditions-of-confinement claims against defendants Hanson, Riel, and Lovely based on the removal of clothing, bedding, and hygiene items from plaintiff's cell on April 17, 2023, and against defendants M. Collins, C. Collins, and Murphy based on the failure to remedy this property deprivation order; (2) plaintiff's conditions-of-confinement claims against defendants John Doe #3, Mental Health Therapist Jane Doe #1, Mental Health Therapist Jane Doe #2, M. Collins, and Superintendent C. Collins based on these officials allowing plaintiff to be housed in unsanitary conditions between May 12 and May 23, 2023; (3) plaintiff's conditions-of-confinement claims against defendants Velie, John Doe #3, McFee, Macura, Smith, Tyler, Mental Health Therapists Jane Doe #1 and Jane Doe #2, Superintendent C. Collins, and Lashinsky based on the events of May 12, 2023, and continued deprivations through June 22, 2023.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's conditions-of-confinement claims against defendants Bailey, Annucci, Montgomery, Maher, and Torres based on these officials allegedly authorizing or failing to remedy an automatic property deprivation policy that extends to bedding and hygiene materials as a punishment for "any staff related incidents."

As noted above with respect to plaintiff's related free exercise claim, although plaintiff generically alleges that these defendants were aware of an alleged policy of depriving inmates of in-cell property as a form of punishment, the Court has no basis to plausibly infer that these officials were ever directly involved in the removal of personal property from plaintiff's cell.  In addition, plaintiff does not allege that he ever received a written deprivation order that denied him access to all in-cell property that was authorized by any of these defendants, or that any of them ever witnessed the absence of property in his cell beyond that which was identified in a deprivation order.

Furthermore, DOCCS Directive #4933.IV.B not only requires the daily review of any deprivation order, but also requires approval by "an appropriate clinical professional or, in their absence, by the ranking facility health service professional" if the deprivation order involves "depriving an incarcerated individual of minimum standard items (e.g., bedding, clothing, etc.) for 'mental health' or 'psychiatric' reasons[.]"  Plaintiff does not allege that these requirements were not followed with respect to the deprivation orders he received.  Nor does he allege any facts which plausibly suggest that defendants Bailey, Annucci, Montgomery, Maher, and/or Torres had a reason to know that these requirements were not being followed, or investigated any such wrongdoing.  *See, e.g., Braxton v. Bruen*, No. 9:17-CV-1346 (BKS/ML), 2021 WL 4950257, at *6 (N.D.N.Y. Oct. 25, 2021) ("Even before *Tangreti*, receipt

30

by a supervisory official of a letter from an inmate, without more, has been insufficient to establish the official's personal involvement in a § 1983 constitutional claim." (collecting cases)); *Tripathy v. Schneider*, No. 21-CV-6392, 2021 WL 4504461, at *3 (W.D.N.Y. Oct. 1, 2021) (dismissing Section 1983 claim against Commissioner of New York State Department of Corrections and Community Supervision and Governor of New York where complaint alleged only that these officials "failed to respond" to plaintiff's complaints of wrongdoing, noting that "the failure to respond to letters protesting unconstitutional actions and/or requesting an investigation is, without more, insufficient to establish personal involvement"); *Brown v. Montone*, No. 17-CV-4618, 2018 WL 2976023, at *4 (S.D.N.Y. June 13, 2018) ("It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (quoting *Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517, at *7 (S.D.N.Y. Sept. 7, 2017)); *Tangreti*, 983 F.3d at 616 (holding that a plaintiff asserting an Eighth Amendment claim against a supervisory official must allege that the supervisor had "subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it" (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Thus, the Court has no basis to plausibly infer from the allegations in the amended complaint and documents attached thereto that defendants Bailey, Annucci, Montgomery, Maher, and/or Torres were personally involved in any deprivation of daily essentials that plaintiff allegedly experienced.

Accordingly, plaintiff's conditions-of-confinement claims against defendants Bailey, Annucci, Montgomery, Maher, and Torres are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief

may be granted.

### e.  Excessive Force and Sexual Assault Claims

The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).[6]

"To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.'"  *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)).

"Because sexual abuse of a prisoner by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).  "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to

---

[6]  In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 256-57 (2d Cir. 2015).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's Eighth Amendment excessive force and sexual assault claims against defendants Lashinsky, Broom, Velie, McFee, Macura, Smith, Tyler, Gundrum, and Lovely based on alleged incidents that occurred on May 12, 2023, survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### f. Medical Indifference Claim

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle*, 429 U.S. at 102, 104. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104).

An Eighth Amendment claim arising out of inadequate medical care has two elements. "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). "Determining whether a deprivation is an objectively serious deprivation entails two inquiries[:] [1] . . . whether the prisoner was actually deprived of adequate medical care[; and 2] . . . whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (citations omitted). "Where a plaintiff alleges that inadequate care was provided—instead of alleging a failure to provide any treatment—the inquiry focuses on 'the

particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract.'" *Revels v. Corr. Med. Care, Inc*., No. 9:17-CV-0088 (MAD/TWD), 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) (quoting *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003)); *Salahuddin*, 467 F.3d at 280 (noting that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability (citation omitted)).

"Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Blyden*, 186 F.3d at 262 (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'").

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's Eighth Amendment medical indifference claim against defendant McCarthy survives sua sponte review and requires a response.  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### g.  Due Process Claims

### (i)  Due Process Claim Based on Control Suit

With respect to plaintiff's due process claim against defendant Hanson, the amended

complaint alleges that this official authorized plaintiff's placement in an exposure control suit on February 14, 2023, in disregard of the DOCCS Directive that required a one-time warning for lewd behavior prior to the authorization of a control suit.  *See* Am. Compl. at 30.

DOCCS Directive No. 4939 governs the placement of incarcerated individuals in exposure suits.  *See* https://doccs.ny.gov/system/files/documents/2022/10/4939.pdf (last visited Feb. 16, 2024).  The Directive provides that an incarcerated individual who "engages in lewd conduct by intentionally exposing the private area(s) of their body (breasts, genitals, buttocks) and/or intentionally masturbating in the presence of staff and/or visitor(s), etc., . . . will be issued a misbehavior report in accordance with established policy" along with a one time warning -- unless the incident of lewd conduct occurs in a visiting area -- indicating that future inappropriate conduct may result in the imposition of an 'Exposer Control Suit Order.'" *Id*.  The Directive further sets forth the scope of any imposed Exposure Control Suit Order. *Id*.

Even assuming defendant Hanson failed to honor the one-time warning requirement in the aforementioned Directive, the failure to follow the requirements of a DOCCS Directive, without more, does not give rise to a cognizable due process claim.  *See Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (noting that a violation of a state procedural statute alone, without a due process violation, "would not be enough generally to establish a constitutional claim"); *Sanders v. Gifford*, 9:11-CV-0326 (LEK/RFT), 2014 WL 5662775, at *4 (N.D.N.Y. Nov. 4, 2014) ("[E]ven assuming that [the d]efendant . . . deviated from state procedures or DOCCS Directives, a violation of such rules and regulations does not, standing alone give rise to liability under § 1983."); *see also Holland v. City of New York*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016) ("An alleged violation  of a prison policy, directive, or regulation, in and

of itself, does not give rise to a federal claim, because '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") (alteration in original) (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990)).

Furthermore, insofar as plaintiff intended to raise a substantive due process challenge to the alleged imposition of the control suit, the law is well-settled that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (internal citations and quotation marks omitted).

In this case, the Eighth Amendment protects inmates against unconstitutional conditions of confinement.  Thus, plaintiff's challenge to his placement in the control suit is more appropriately analyzed as an Eighth Amendment claim.  *See, e.g., H'Shaka v. O'Gorman*, 444 F. Supp. 3d 355, 371-72 (N.D.N.Y. 2020) (citing *Garraway v. Smith*, No. 12-CV-0924, 2019 WL 2135479, at *5 (W.D.N.Y. May 16, 2019) (noting that the correct amendment for conditions-of-confinement claims for convicted prisoners is the Eighth Amendment, not the Fourteenth Amendment Due Process Clause); *Guzman v. Albany Med. Ctr. Hosp.*, No. 16-CV-0087, 2016 WL 3823492, at *2 (N.D.N.Y. July 12, 2016) (Sharpe, J.) (finding Fourteenth Amendment substantive due process claim was subsumed by Eighth Amendment deliberate indifference claim)); *Felix-Torres v. Graham*, 521 F. Supp. 2d 157, 164 (N.D.N.Y. 2007) (Kahn, J.) ("The Supreme Court has noted that where Eighth Amendment and Fourteenth Amendment due process protections overlap, the [substantive] due process claim will be subsumed by the Eighth Amendment claim as the Eighth

36

Amendment offers greater protection to prisoners.")).

Accordingly, plaintiff's due process claim against defendant Hanson is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### (ii)  Disciplinary Due Process Claims

Insofar as plaintiff asserts Fourteenth Amendment disciplinary due process claims against defendants Benware, LaFarr, and Hanson, the Court is mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, and therefore finds that these claims survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these due process claims can withstand a properly filed dispositive motion.

### h.  State Law Assault and Battery Claims

"[A] cause of action under 42 U.S.C. § 1983 may not be premised solely on a violation of state law . . . ."  *O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *7 n.15 (N.D.N.Y. Feb. 10, 2010); *Estelle*, 429 U.S. at 105-06 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").  However, generally speaking, a court may choose to exercise supplemental jurisdiction over pendent state law causes of action pursuant to 28 U.S.C. § 1367 where the state law causes of action "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  *See* 28 U.S.C. § 1367(a).

Here, plaintiff's assault and battery claims are based on the same allegations that give rise to his excessive force and sexual assault claims, which have survived sua sponte review.

As a result, the Court will exercise supplemental jurisdiction over plaintiff's related state law claims, which also survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### i. State Constitutional Claims

Insofar as plaintiff asserts claims based on violations of the New York State Constitution, the Court adopts the view held by "various federal courts in this circuit . . . that there is no private right of action under the New York State Constitution where . . . remedies are available under [§] 1983." *Leibovitz v. City of New York*, No. 14-CV-7106, 2018 WL 1157872, at *21 (E.D.N.Y. Mar. 2, 2018) (internal quotation marks and citations omitted); *see also Murphy v. Onondaga Cnty*., No. 18-CV-1218 (GLS/CFH), 2022 WL 819281, at *8 (N.D.N.Y. Mar. 18, 2022).

Accordingly, plaintiff's claims based on violations of the New York State Constitution are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Previously Dismissed Claims

As noted, the amended complaint reasserts the following Section 1983 claims that were previously dismissed: (1) First Amendment access-to-courts and free exercise claims against defendants Lewis, Turriglio, and Delasse based on the removal of legal material from plaintiff's cell on September 24, 2022, and against defendants Bedard, Frazier, and Shanley based on the failure to remedy this property deprivation order; (2) Eighth Amendment conditions-of-confinement claims against defendants Murphy and Petrone based on depriving plaintiff of access to water in his cell between November 19 and November 21,

2022; and (3) an Eighth Amendment conditions-of-confinement claim against defendant Hanson based on imposing a directive on February 14, 2023, requiring plaintiff's placement in an exposure suit for all movement activities.

### a. Access-to-Courts Claims

The original complaint was construed to assert First Amendment access-to-court claims based on allegations that "legal documents" and copies of grievances were removed from plaintiff's cell on September 24, 2022, as part of a property deprivation order. *See* August 2023 Order at 17. The Court dismissed these claims on the grounds that the complaint failed to allege any facts which plausibly suggested that plaintiff suffered an actual injury in any court proceeding as a result of the alleged property deprivation. *Id*. In doing so, the Court explained that the complaint "fail[ed] to identify any legal action that plaintiff was unable to pursue, or had dismissed, as a result of the alleged temporary removal of legal materials from his cell" and "interference with access to grievance channels does not give rise to a cognizable Section 1983 claim." *Id*.

As with the original complaint, the amended complaint fails to identify any legal action that plaintiff was unable to pursue, or had dismissed, as a result of the alleged temporary removal of legal materials from his cell. Furthermore, plaintiff does not explain how his temporary lack of access to legal documents and grievances impacted his ability to pursue or prosecute any claims, nor does he provide any details regarding the underlying claims in any of his cases. Thus, the Court has no basis to plausibly infer either that the "arguable" nature of any underlying claim was more than hope, or that plaintiff suffered an actual injury of a constitutional magnitude in any court proceeding as a result of the alleged temporary removal of legal materials from his cell.

Accordingly, plaintiff's First Amendment access-to-courts claims based on alleged property deprivations beginning on September 24, 2022, are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### b.  Free Exercise Claims

The original complaint was construed to assert First Amendment free exercise claims against defendants Bedard, Frazier, and Shanley based on allegations that these officials failed to remedy the property deprivation order issued on September 24, 2022, which resulted in the removal of religious materials from plaintiff's cell.  *See* August 2023 Order at 14.  The Court dismissed these claims on personal involvement grounds because the complaint failed to allege any facts which plausibly suggested that "plaintiff informed any of these officials that religious materials were removed from his cell on September 24, 2022, or otherwise raised concerns about his ability to practice his religion as a result of the deprivation order[,]" and "the letters and grievances attached to the complaint regarding the deprivation order imposed on September 24, 2022, d[id] not make any reference to the removal of religious materials from plaintiff's cell." *Id.*

As with the original complaint, the amended complaint lacks allegations which plausibly suggest that plaintiff advised defendants Bedard, Frazier, and Shanley, at any point between when property was removed from his cell on September 24, 2022 and when it was returned to him on October 23, 2022, that the deprivation order extended to religious materials.  Thus, the amended complaint fails to allege facts which plausibly suggest that any of these officials were aware, at any point between September 24 and October 23, 2022, that plaintiff was being deprived of religious materials, let alone that the alleged deprivation

prevented him from being able to practice his religious beliefs.

Accordingly, plaintiff's First Amendment free exercise claims against defendants Bedard, Frazier, and Shanley are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### c. Conditions-of-Confinement Claims

As noted, the amended complaint reasserts conditions-of-confinement claims against (1) defendants Murphy and Petrone based on these officials allegedly depriving plaintiff of access to water in his cell between November 19 and November 21, 2022, and (2) defendant Hanson based on this official allegedly imposing a directive on February 14, 2023, requiring plaintiff's placement in an exposure suit for all movement activities.

With respect to the claims against defendants Murphy and Petrone, as with the original complaint, the amended complaint lacks any details regarding the exact times that the water in plaintiff's cell was turned off and on, why the water was turned off, whether plaintiff was allowed to leave his cell during this time to shower, use the bathroom, and wash his hands, and/or whether plaintiff was provided drinks with his meals during this time.  Thus, the Court has no basis to plausibly infer that turning off the water to plaintiff's cell for less than three days either caused plaintiff to suffer a serious deprivation of a basic human need, or was done out of deliberate indifference to any such need.  *See, e.g., Walker v. Schriro*, No. 11-CV-9299, 2013 WL 1234930, *13 (S.D.N.Y. 2013) (allegations that plaintiff was temporarily deprived of food, shower, linens, running water and use of a toilet for two days were insufficient to state an Eighth Amendment claim).

With respect to the claim against defendant Hanson, as with the original complaint, the amended complaint is devoid of allegations which plausibly suggest that the use of the

exposure suit caused plaintiff physical harm, restricted his movement, or precluded him from attending programs, visits, or recreation.  Rather, plaintiff alleges only that he experienced "flashbacks, anxiety, and depression" as a result of having to wear the control suit.  Am. Compl. at 31.  Furthermore, by plaintiff's own allegations, he was only required to wear the exposure suit when he left his cell, for a one-month period, and the amended complaint lacks allegations which plausibly suggest that defendant Hanson was aware that plaintiff was suffering from any adverse health conditions, yet chose, by himself, to maintain the exposure suit order.  *See* Am. Compl. at 31.  Thus, the Court has no basis to plausibly infer from the allegations in the amended complaint either that requiring plaintiff to wear an exposure suit caused him to suffer a serious deprivation of a basic human need, or that defendant Hanson imposed (and maintained) the exposure suit directive out of deliberate indifference to plaintiff's serious health needs.  *See Abreu v. Lake*, No. 9:17-CV-1312 (DNH/DEP), 2018 WL 11236520, at *25 (N.D.N.Y. Jan. 22, 2018) (dismissing Eighth Amendment claim based on requiring inmate-plaintiff to wear a jumpsuit whenever he exited his cell because the plaintiff "concedes that the Jumpsuit was imposed due to his lewd conduct within his cell" and failed to "plead[ ] facts suggesting that the use of the Jumpsuit deprived him of basic human needs or that the Jumpsuit restricted [his] movement, prohibit[ed] him from leaving his cell, or preclude[d] [him] from attending programs or visit"), *upholding dismissal on reconsideration sub nom. Abreu v. Donahue*, 2018 WL 11236521 (N.D.N.Y. Mar. 13, 2018); *Allah v. Hilton*, No. 9:13-CV-0826 (FJS/TWD), 2016 WL 11265991, at *12 (N.D.N.Y. May 9, 2016) (same), *report and recommendation adopted by* 2017 WL 1194502 (N.D.N.Y. Mar. 31, 2017); *see also Barrow v. Buren*, No. 9:12-CV-01268 (MAD/CFH), 2015 WL 417084, at *15 (N.D.N.Y. Jan. 30, 2015) (holding that the physical discomfort of the padlock on exposure jumpsuit did

42

not pose an excessive risk of serious injury); *Harris v. Horel*, No. 06-CV-7761, 2009 WL

2761339, at *4 (N.D. Cal., Aug. 31, 2009) (finding no Eighth Amendment violation as the

exposure jumpsuit did not restrict the plaintiff from leaving his cell, but rather required the

plaintiff to wear the jumpsuit when he was outside his cell); *cf. Selby v. Martin*, 84 Fed. App'x

496, 498 (6th Cir. 2003) (finding no Eighth Amendment violation due to the use of leg irons

and belly chains that the plaintiff was directed to wear after being found guilty of attempted

escape).

Accordingly, and for the reasons set forth in the August 2023 Order, plaintiff's

reasserted conditions-of-confinement claims are dismissed pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief

may be granted.

### 4. Claims that Survived Sua Sponte Review

As noted, the amended complaint reasserts each of the Section 1983 claims that

previously survived sua sponte review.  Moreover, the allegations in the amended complaint

are not materially different from the allegations in the original complaint with respect to these

claims.  Accordingly, and for the reasons set forth in the August 2023 Order, these claims

once again survive initial review and require a response.  In so ruling, the Court expresses no

opinion as to whether these claims can withstand a properly filed dispositive motion.

### 5. Summary of the Surviving Claims

In light of the foregoing, the following claims have survived sua sponte review and

require a response: (1) plaintiff's First Amendment retaliation claims against defendants

Lewis, Turriglio, and Delasse based on a property deprivation order imposed on September

24, 2022, and against defendants Bedard, Frazier, and Shanley based on the failure to

43

remedy this property deprivation order; (2) plaintiff's First Amendment retaliation claims against defendants Petrone and Delasse based on an alleged incident in the medical unit on November 19, 2022; (3) plaintiff's First Amendment retaliation claim against defendant Hanson based on imposing a directive on February 14, 2023, requiring plaintiff's placement in an exposure suit for all movement activities; (4) plaintiff's First Amendment retaliation claim against defendant Hanson based on his issuance of a false misbehavior report in connection with an alleged incident that occurred on March 7, 2023; (5) plaintiff's First Amendment retaliation claim against defendant McCarthy based on this official ignoring plaintiff's suicidal feelings and complaints of abuse on March 7, 2023, and issuing him a misbehavior report in response to his stated concerns; (6) plaintiff's First Amendment retaliation claim against defendant Hanson based on the alleged confiscation of plaintiff's belt on March 13, 2023; (7) plaintiff's First Amendment retaliation claim against defendant Hanson based on an alleged use-of-force incident that occurred on April 5, 2023, and subsequent issuance of a false misbehavior report; (8) plaintiff's First Amendment retaliation claim against defendant McCarthy based on this official ignoring plaintiff's suicidal feelings and complaints of abuse on April 6, 2023, and issuing him a misbehavior report in response to his stated concerns; (9) plaintiff's First Amendment retaliation claims against defendants Velie, John Doe #4, John Doe #5, John Doe #6, John Doe #7, Corrections Sergeant John Doe #1, Hanson, Riel, and Lovely based on incidents that occurred on April 17, 2023; (10) plaintiff's First Amendment retaliation claim against defendant Lovely based on subjecting plaintiff to various deprivations on May 12, 2023; (11) plaintiff's First Amendment free exercise claims against defendants Lewis, Turriglio, and Delasse based on the removal of religious items from plaintiff's cell on September 24, 2022; (12) plaintiff's First Amendment free exercise claims against

44

defendants Petrone, Frazier, and Syed based on the removal of religious items from plaintiff's cell on November 13, 2023, and against defendant Shanley based on the failure to remedy the property deprivation order imposed on November 13, 2023; (13) plaintiff's First Amendment free exercise claims against defendants Hanson, Riel, and Lovely based on the removal of religious items from plaintiff's cell on April 17, 2023, and against defendants M. Collins, C. Collins, and Murphy based on the failure to remedy this property deprivation order; (14) plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Lewis, Turriglio, and Delasse based on the removal of clothing, bedding, and hygiene items from plaintiff's cell on September 24, 2022, and against defendants Bedard, Frazier, and Shanley based on the failure to remedy this property deprivation order; (15) plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Petrone, Frazier, and Syed based on the removal of clothing, bedding, and hygiene items from plaintiff's cell on November 13, 2022, and against defendant Shanley based on the failure to remedy the property deprivation order imposed on November 13, 2022; (16) plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Hanson, Riel, and Lovely based on the removal of clothing, bedding, and hygiene items from plaintiff's cell on April 17, 2023, and against defendants M. Collins, C. Collins, and Murphy based on the failure to remedy this property deprivation order; (17) plaintiff's Eighth Amendment conditions-of-confinement claims against defendants John Doe #3, Mental Health Therapist Jane Doe #1, Mental Health Therapist Jane Doe #2, M. Collins, and Superintendent C. Collins based on these officials allowing plaintiff to be housed in unsanitary conditions between May 12 and May 23, 2023; (18) plaintiff's Eighth Amendment conditions-of-confinement claims against defendants Velie, John Doe #3, McFee, Macura, Smith, Tyler, Mental Health Therapists Jane

45

Doe #1 and Jane Doe #2, Superintendent C. Collins, and Lashinsky based on incidents that occurred May 12, 2023, and deprivations that continued until June 22, 2023; (19) plaintiff's Eighth Amendment medical indifference claim against defendant McCarthy based on this official ignoring plaintiff's suicidal feelings, and failing to report his sexual abuse claim; (20) plaintiff's Eighth Amendment excessive force and sexual abuse claims against defendants Petrone and Delasse based on an alleged incident in the medical unit on November 19, 2022; (21) plaintiff's Eighth Amendment excessive force and sexual abuse claims against defendants Hanson, John Doe #1 and John Doe #2 based on an alleged incident at plaintiff's cell on February 23, 2023; (22) plaintiff's Eighth Amendment excessive force and sexual abuse claims against defendants Hanson, LaFarr, and Bull based on an alleged incident in an examination room on April 5, 2023; (23) plaintiff's Eighth Amendment excessive force, failure-to-intervene, and sexual abuse claims defendants Lashinsky, Broom, Velie, McFee, Macura, Smith, Tyler, Gundrum, and Lovely based on incidents that occurred on May 12, 2023; (24) plaintiff's Fourteenth Amendment disciplinary due process claims against defendants Benware, LaFarr, and Hanson; (25) plaintiff's Fourteenth Amendment equal protection claims against defendant Hanson based on his use of racial slurs in connection with alleged wrongdoing that occurred on February 23 and March 7, 2023; and (26) plaintiff's state law assault and battery claims.

## III.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint is accepted for filing and is the operative pleading; and it is further

**ORDERED** that the claims recited above in Section II.C.5 **SURVIVE** sua sponte

46

review and require a response; and it is further

ORDERED that all remaining claims are **DISMISSED** pursuant to 28 U.S.C. §

1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be

granted, as set forth above; and it is further

ORDERED that the Clerk shall add the following officials to the docket as defendants:

(1) Office of Mental Health Official McCarthy; (2) Corrections Sergeant Velie; (3) Corrections

Officer John Doe #1; (4) Corrections Officer John Doe #2; (5) Corrections Officer John Doe

#3; (6) Corrections Officer John Doe #4; (7) Corrections Officer John Doe #5; (8) Corrections

Officer John Doe #6; (9) Corrections Officer John Doe #7; (10) Corrections Sergeant John

Doe #1; (11) Corrections Lieutenant Riel; (12) Corrections Sergeant Lovely; (13) Deputy

Superintendent of Mental Health M. Collins; (14) Great Meadow Correctional Facility

Superintendent C. Collins; (15) Corrections Lieutenant Murphy; (16) Mental Health Therapist

Jane Doe #1; (17) Mental Health Therapist Jane Doe #2; (18) Corrections Officer McFee;

(19) Corrections Officer Macura; (20) Corrections Officer Smith; (21) Corrections Officer

Tyler; (22) Corrections Lieutenant Gundrum; (23) Corrections Officer Lashinsky; (24)

Corrections Officer Broom; (25) Supervisor Offender Rehabilitation Coordinator Benware;

(26) Office of Mental Health Unit Chief Bailey; (27) former DOCCS Commissioner Annucci;

(28) Deputy Superintendent of Security Montgomery; (29) Office of Special Investigations

Official Maher; and (30) First Deputy Torres; and it is further

ORDERED that the Clerk shall **TERMINATE** the following officials from this action: (1)

Office of Mental Health Unit Chief Bailey; (2) former DOCCS Commissioner Annucci; (3)

Deputy Superintendent of Security Montgomery; (4) Office of Special Investigations Official

Maher; (5) First Deputy Torres; and it is further

47

**ORDERED** that upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon the defendants McCarthy, Velie, Riel, Lovely, M. Collins, C. Collins, Murphy, McFee, Macura, Smith, Tyler, Gundrum, Lashinsky, Broom, and Benware;[7] and it is further

**ORDERED** that upon the completion of service on defendants McCarthy, Velie, Riel, Lovely, M. Collins, C. Collins, Murphy, McFee, Macura, Smith, Tyler, Gundrum, Lashinsky, Broom, and Benware, a response to plaintiff's amended complaint be filed by each of the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff take reasonable steps to ascertain the identity of the "Doe" defendants and when identified, seek to amend the complaint to add these individuals as defendants in this action pursuant to Federal Rule of Civil Procedure 15(a).  Plaintiff is advised the failure to timely name these officials as defendants may result in their dismissal from this action pursuant to Rules 4(m) and 41(b) of the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with requests by the

---

[7]    A summons will not issue for the "Doe" defendants because the U.S. Marshal cannot effect service on an individual who has not been adequately identified by name.  Furthermore, counsel has already appeared in this case on behalf of defendants Bedard, Bull, Delasse, Frazier, Hanson, LaFarr, Lewis, Petrone, Shanley, Syed, and Turriglio.  *See* Dkt. No. 22.  Thus, the Clerk need not issue summonses for these defendants.

Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

ORDERED that the Clerk shall serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED.**

Dated: February 23, 2024
       Syracuse, NY

Glenn T. Suddaby
U.S. District Judge

49